UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60132-Civ-Cohn/Seltzer

BRAIN PHARMA, LLC,

    Plaintiff,

vs.

JAVIER SCALINI et al.,

    Defendants.
_____/

### DEFENDANTS' MOTION TO DISMISS COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Javier Scalini, individually, d/b/a Allstarhealth.com; Fernando Scalini, individually, d/b/a Allstarhealth.com; Javier Scalini and Fernando Scalini, jointly and severally, d/b/a Allstarhealth.com; and ADF, Inc. d/b/a Advantis Nutrition ("Defendants") move to dismiss Brain Pharma, LLC's ("BPI's") complaint for failure to state a claim on which relief can be granted.

### BACKGROUND

According to the complaint, BPI is a sports-nutrition company that manufactures and sells dietary and nutritional supplements. Compl. ¶ 9. Since January 2009 BPI has used the trademark logo BPI (hereafter, the "BPI Mark") to market its products. *Id.* ¶ 10. BPI's products are sold through its website and through other sports-nutrition specialty stores across the United States and around the world. *Id.* ¶ 11. The public allegedly has come to recognize and rely on the BPI Mark "as an indication of the high quality associated with BPI's products." *Id.* ¶ 12.

BPI sells its products through one domestic distributor and a limited network of authorized dealers—none of which include Defendants, who sell and distribute vitamins and

nutritional supplements through their websites. *Id.* ¶¶ 17–18. BPI alleges that "Allstarhealth has misrepresented itself to the public, through its website, as an unauthorized BPI agent," and "advertises and sells BPI products in excess of 50% below retail prices set by BPI." *Id.* ¶ 20. Advantis is also "selling and distributing BPI's products to retailers and end users unaffiliated with BPI without authorization." *Id.* ¶ 21. BPI alleges, moreover, that the "BPI products being sold by Defendants are not inspected by BPI or BPI's authorized distributors and dealers prior to sale," and that "the BPI products being sold by Defendants are not distributed in accordance with the quality control measures BPI has in place for sale of its goods. As such, Defendants are not selling genuine BPI products." *Id.* ¶ 22.

Based on these allegations, BPI brought a six-count complaint against Defendants for trademark infringement in violation of 15 U.S.C. § 1125(a); unfair competition in violation of 15 U.S.C. § 1125(a); trademark dilution in violation of 15 U.S.C. § 1125(c); injury to business reputation and dilution in violation of Section 495.151 of the Florida Statutes; trademark infringement of an unregistered mark under Florida common law; and common-law unfair competition. Because BPI has failed to state a claim on which relief can be granted, Defendants move to dismiss the complaint.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). When reviewing a complaint against this standard, courts apply a "two-step process." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010). First, a court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

BPI has attached three exhibits to the complaint. "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) (internal quotation marks omitted).

## ANALYSIS

**A.     BPI fails to state a claim for trademark infringement under 15 U.S.C. § 1125(a)**

BPI contends that, because of "the Defendants' promotion, advertisement, distribution and commercial sale of BPI products without BPI's authorization," Compl. ¶ 31, Defendants "have caused, and will continue to cause, confusion and mistake as to the affiliation, connection and association of Defendants with BPI," *id.* ¶ 34, as well "as to the origin, sponsorship and/or approval of goods, services and commercial activities of Defendants," *id.* ¶ 35. These allegations—in addition to those above, which are incorporated by reference into each count—do not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. —, 129 S. Ct. at 1949.

When stripped of its legal conclusions, BPI's complaint is essentially alleging that Defendants, without BPI's consent, are engaged in the unauthorized sale of BPI's products. But "the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1023 (2d Cir. 1989).

> This is for the simple reason that consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale. Under what has sometimes been called the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham Act are exhausted after the trademark owner's first

3

> authorized sale of that product. Therefore, even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good does not violate the Act.

*Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301–02 (11th Cir. 2001) (citations omitted).

BPI tries to plead around the first-sale doctrine by sprinkling among its allegations a few trademark terms of art. Specifically, BPI alleges that the products sold by Defendants "are not inspected … prior to sale" and that they "are not distributed in accordance with the quality control measures BPI has in place for sale of its goods." Compl. ¶ 22. "As such," BPI alleges, "Defendants are not selling genuine BPI products." *Id.* These allegations—conclusory statements, really—are insufficient to avoid the first-sale doctrine.

Take first BPI's allegation that the products have not been inspected "prior to sale." To be sure, it can be trademark infringement to deal in trademarked goods "which have not been inspected by the trademark owner." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25.42, at 25-118 (2009). But BPI is not alleging that BPI did not inspect the products *at all*. BPI is alleging, rather, that it did not inspect the products "prior to sale." This temporal qualifier—suggesting that BPI inspects its products at the retail level—is important. It means that BPI is trying to avoid precisely what the first-sale doctrine is designed to preserve: "an area for competition by limiting the producer's power to control the resale of its product. When a purchaser resells a trademarked article under the producer's trademark, and nothing more, there is no actionable misrepresentation under the statute." *Sebastian Int'l, Inc. v. Long Drug Stores Corp.*, 53 F.3d 1073, 1075 (9th Cir. 1995). Again, BPI has not alleged that it has not inspected the products at all.

BPI's allegation that Defendants do not distribute the products "in accordance with the quality control measures BPI has in place for sale of its goods" is more conclusory yet. "Goods … that do not meet the trademark owner's quality control standards will not be considered genuine goods, and their sale will constitute trademark infringement." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994). But BPI alleges no facts showing how Defendants fail to distribute the products in accordance with BPI's quality-control standards. BPI's failure to do so is insufficient to state a claim. *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 304 (3d Cir. 1998) ("'[Q]uality control' is not a talisman the mere utterance of which entitles the trademark owner to judgment.'").

The inadequacies of BPI's pleading are highlighted when compared with the facts discussed in the seminal decisions on quality-control standards. In *Shell Oil Co. v. Commercial Petroleum, Inc.*, an oil company used quality-control standards "for the transportation, delivery and storage of bulk oil … to maintain the quality of its bulk oil, and … [the] quality control standards were an integral part of the bulk product identified by the marks." 928 F.2d 104, 107 (4th Cir. 1991). Even though the defendant claimed it used "its own standards that guarantee the quality of the oil," *id.*, the Fourth Circuit nonetheless concluded that it was the trademark owner's enforcement of its own quality controls that mattered, *id.* In *El Greco Leather Products Co. v. Shoe World, Inc.*, the trademark owner required its agent to sign an inspection certificate certifying that shoes fully complied with the trademark owner's standards and specifications. 806 F.2d 393, 395 (2d Cir. 1986). The failure of the defendant to obtain these certificates of inspection—which were referred to by the Second Circuit as "an integral part of appellant's effort at quality control," *id.*—meant that the defendant had infringed the trademark.

5

In these decisions, it was clear what the quality-control standards were and how the defendants failed to meet them. In contrast, here BPI does not allege what its quality-control standards, if any, are that apply to retail Internet sales like those of Defendants. Nor does BPI allege how Defendants have distributed the products inconsistent with the standards. This matters, because not every failure to comply with quality-control standards results in infringement. Indeed, in *Iberia Foods Corp.* the Third Circuit concluded that the resale of a trademark owner's cleaning products did not result in the products' not being "genuine," even though the reseller did not conform with the owner's quality-control standards. 150 F.3d at 306. "[T]he test is whether the quality control procedures established by the trademark owner are likely to result in differences between the products such that consumer confusion regarding the sponsorship of the products cocould injure the trademark owner's goodwill." *Id.* at 304. Because that was not the case in *Iberia Foods Corp.*, no infringement occurred. And because of BPI's failure to allege *anything* in the complaint about its quality-control procedures, the Court has no way of knowing—at least from BPI's allegations—whether any infringement occurred here, either.

**B.     BPI fails to state a claim for unfair competition and false designation of origin under 15 U.S.C. § 1125(a)**

Apart from the name of Count II (unfair competition and false designation of origin) it is not clear how Count II (materially) differs from Count I. The chief paragraph of Count II is that "Defendants' adoption and use of the BPI Mark in commerce constitutes a false designation of origin, a false or misleading description of fact and a false or misleading representation that Defendants and any goods and services of Defendants have or may have originated with, or are sponsored or approved by, BPI." Compl. ¶ 39. BPI also alleges that Defendants' use of the BPI Park "misrepresents the nature, characteristics, qualities and origin" of the BPI products that

6

Defendants sell, *id.* ¶ 40, and "has caused and is likely to continue to cause confusion and mistake … as to the true affiliation, connection, or association of any BPI branded goods" that Defendants sell, *id.* ¶ 41. These allegations, which are nothing more than "labels and conclusions … , will not do." *Iqbal*, 556 U.S. —, 129 S. Ct. at 1949. And because labels and conclusions are not entitled to the assumption of truth, the Court need not even reach the second step of the "two-step process" of reviewing a complaint on a motion to dismiss—i.e., " determin[ing] whether the[] [well-pleaded allegations] plausibly give rise to an entitlement to relief." *Jacobs*, 626 F.3d at 1333.

But even if the Court were to put these deficiencies to the side, Count II nonetheless fails to state a claim on which relief can be granted. "To prevail on a false designation of origin claim under 15 U.S.C. § 1125(a) a plaintiff must establish that the defendant adopted a mark confusingly similar to the plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503 (11th Cir. 1985). To the extent that Count II alleges that a consumer would be confused about the origin of the goods, the first-sale doctrine applies with equal force to false-designation-of-origin claims. "This is for the simple reason that consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale." *Davidoff & CIE, S.A.*, 263 F.3d at 1301; *accord NEC Elecs. V. Cal Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987) ("[T]rademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold.").

To the extent that Count II is grounded in an alleged "affiliation" or "connection" between BPI and Defendants, there are no such allegations—apart from mere labels—in the

7

complaint. Citing a copy of a printout of BPI products sold through www.allstarhealth.com, BPI alleges that "Allstarhealth has misrepresented itself to the public, through its website, as an authorized BPI agent," Compl. ¶ 20 & Ex. C. But the printout, which "is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), does not say or even suggest that any kind of agency relationship exists between the parties. And "[w]here there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Friedman*, 520 F.3d at 1295 n.6 (internal quotation marks omitted).

C.  **BPI fails to state a claim for trademark dilution under 15 U.S.C. § 1125(c)**

BPI alleges that "Defendants' infringing use of the BPI Mark … has diluted the distinctive value and quality of the BPI Mark." Compl. ¶ 48. That is so, BPI alleges, because the "unauthorized sale of thirteen or more BPI products at deeply discounted prices has diluted the value of the BPI Mark and diminished BPI's reputation as a provider of reliable, high quality, cutting edge products." *Id.* This is not dilution.

> To prevail on a dilution claim, a plaintiff must establish four elements:
>
> (1) it owns a famous mark that is distinctive; (2) the defendant is using a mark in commerce that allegedly dilutes the plaintiff's famous mark; (3) the defendant's use of its mark began after the plaintiff's mark became famous; and (4) the defendant's use of its mark is likely to cause dilution by blurring or by tarnishment.

*Coach Servs., Inc. v. Triumph Learning LLC*, — F.3d —, 2012 WL 540069, at *12 (Fed. Cir. Feb. 21, 2012). Section 1125(c)(2)(B) of Title 15 of the U.S. Code defines "dilution by blurring" as an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." Section 1125(c)(2)(C) defines "dilution by tarnishment" as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." Though unclear from the complaint,

it appears as though BPI is alleging both dilution by blurring and by tarnishment. Either way, BPI fails to state a claim for dilution.

First—and despite BPI's conclusory allegation that the BPI Mark is "famous within the meaning of 15 U.S.C. § 1125(c)," Compl. ¶ 47—BPI has failed to allege sufficient facts showing that the BPI Mark is "famous" for dilution-law purposes. "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine "whether a mark possesses the requisite degree of recognition," a court may consider "[t]he duration, extent, and geographic reach of advertising and publicity of the mark"; "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; "[t]he extent of actual recognition of the mark"; and "[w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." *Id.*

This requirement is difficult and demanding. "The standard for the kind of 'fame' needed to trigger anti-dilution protection is more rigorous and demanding than the 'fame' which is sufficient for the classic likelihood of confusion test." *Coach Servs., Inc.* — F.3d at —, 2012 WL 540069, at *13 (quoting McCarthy, *supra*, § 24:104, at 24-290 (internal quotation marks omitted)). To be sure, "fame for dilution is an either/or proposition—it either exists or does not." *Id.* (internal quotation marks omitted).

> To establish the requisite level of fame, the mark's owner must demonstrate that the common or proper noun uses of the term and third-party uses of the mark are now eclipsed by the owner's use of the mark. An opposer must show that, when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner. In other words, a famous mark is one that has become a household name.

*Id.* at *14 (citations and internal quotation marks omitted).

BPI alleges that the BPI Mark—which it only began using since "January 28, 2009," Compl. ¶ 10—is famous "[a]s a result of the extensive and continuous use of the BPI Mark … and the distinctive and strong nature of the BPI Mark," *id.* ¶ 47. But BPI does not allege that the BPI Mark is widely recognized by the general consuming public of the United States. Nor does BPI allege any facts to determine whether it has achieved such recognition, such as about (1) the duration, extent, and geographic reach of advertising and publicity of the BPI Mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the BPI Mark; (3) the extent of actual recognition of the BPI Mark; or (4) whether the BPI Mark was registered.[1] BPI does not allege that when the general public encounters the BPI Mark in almost any context, it associates the mark with BPI. And BPI certainly does not allege that the BPI mark "is one that has become a household name." Let us be honest: the BPI Mark is not "famous" in accordance with 15 U.S.C. § 1125(c)(2)(A).[2]

Second, even assuming that BPI's allegation that "Defendants' unauthorized sale of thirteen or more BPI products at deeply discounted prices" suffices to establish the second element, BPI has failed to allege any facts regarding the third element, i.e., that Defendants' use began *after* the BPI Mark became famous. *See Coach Servs., Inc.*, — F.3d at —, 2012 WL 540069, at *12. BPI alleges no facts about when its BPI Mark—allegedly in use for a whole three years—became "famous."

---

[1] BPI alleges only that on February 24, 2011, "BPI *filed an application to register* its BPI Mark with the United States and Patent Trademark Office." Compl. ¶ 13 (emphasis added).

[2] For good reasons, the Court can and should decide now whether the BPI Mark is "famous." *See Savin Corp. v. The Savin Grp.*, 391 F.3d 439, 450 (2d Cir. 2004) ("[W]here it is possible for a district court to determine in the first instance the issue of the famousness of the senior mark, the court would be well advised to do so. Indeed, this will often obviate the costly litigation of potentially much thornier issues ….").

Last, BPI fails to allege any facts about the fourth element: that Defendants' use of the BPI Mark is likely to cause dilution by blurring or by tarnishment. As stated above, "dilution by blurring" is an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." § 1125(c)(2)(B). The theory behind dilution by blurring "says that if customers or prospective customers see the plaintiff's famous mark used by other persons to indentify other sources for many different goods and services, then the ability of the famous mark to clearly identify and distinguish only one source might be 'diluted' or weakened." McCarthy, *supra*, § 24:69, at 24-181. The hypothetical example in *McCarthy on Trademarks* is the use of the famous trademark TIFFANY in connection with a Boston restaurant. Though there would be no likelihood of confusion "as to source, sponsorship or affiliation," "[t]he argument is that the TIFFANY mark might no longer serve as a unique identifier of a certain chain of jewelry stores if this and similar other non-confusing uses are permitted." *Id.* § 24:70, at 24-183.

BPI alleges nothing of the sort here—it is not as though BPI alleges that Defendants use the "famous" BPI Mark in connection with, say, selling soap. BPI's allegation focuses only on "Defendants' unauthorized sale of thirteen or more BPI products at deeply discounted prices." Compl. ¶ 48. This is not dilution by blurring.

Nor is it "dilution by tarnishment," which is an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." § 1125(c)(2)(C). The dilution-by-tarnishment "theory has had some success when [a] defendant has used [a] plaintiff's mark as a mark for clearly unwholesome or degrading goods or services." McCarthy, *supra*, § 24:70, at 24-183. Examples include using a *famous* mark in connection with "X-rated movies"; "adult cartoons"; "adult content Web sites"; "adult entertainment"; "a topless

11

bar"; "crude humor"; "drug culture music"; and "illegal drugs." *Id.* § 24:89, at 24-239 to -241. Here, again, BPI alleges only that Defendants have without authorization sold "thirteen or more BPI products at deeply discounted prices," which has "diminished BPI's reputation as a provider of reliable, high quality, cutting edge products." Compl. ¶ 48. Selling a trademarked product at discounted prices, however, does not equate to using a mark "for clearly unwholesome or degrading goods or services."

### D.    BPI's related state-law claims fail for the same reasons

Based on the same alleged facts, BPI asserts three state-law claims: Count IV for injury to business reputation and dilution under Section 495.151 of the Florida Statutes; Count V for trademark infringement of an unregistered mark under Florida common law; and Count VI for unfair competition under Florida common law. Because none of BPI's federal law claims states a claim on which relief can be granted, it follows that none of BPI's state-law claims states a claim on which relief can be granted, either. *See Natural Answers, Inc. v. Smithkline Beecham Corp.*, 529 F.3d 1325, 1332–33 (11th Cir. 2008) ("Since [the plaintiff] is unable to bring an unfair competition claim under the Lanham Act under the theory of either false advertising or trademark infringement, it follows that the common law claims based on unfair competition must fail as well."); *Gift of Learning Found., Inc. v. TCG, Inc.*, 329 F.3d 792, 801 (11th Cir. 2003) ("Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim[.]" (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp. E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991)); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Counts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."); *Investacorp*, 931 F.2d at 1521 ("[T]he federal service mark infringement

claim [i]s a measuring stick for the … Florida common law unfair competition [claim]."); *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) ("The legal standards under the federal and Florida antidilution statutes are the same." (citing *Great S. Bank v. First S. Bank*, 625 So. 2d 463, 471 (Fla. 1993)).

## CONCLUSION

At bottom, all that BPI's complaint alleges is that Defendants have without authorization sold BPI's trademarked products at discounted prices. But "the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation." *H.L. Hayden Co. of N.Y.*, 879 F.2d at 1023; *accord Davidoff & CIE, S.A.*, 263 F.3d at 1301. Although BPI by including trademark terms of art tries to avoid the first-sale doctrine—which undoubtedly applies in this case—it does so only through labels and conclusions, which are not entitled to the assumption of truth. *See Jacobs*, 626 F.3d at 1333.

The complaint should be dismissed.

Dated: March 5, 2012

Respectfully submitted,

s/Brian W. Toth
Sanford L. Bohrer
Florida Bar No. 160643
sandy.bohrer@hklaw.com
Brian W. Toth
Florida Bar No. 57708
brian.toth@hklaw.com
Holland & Knight LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Telephone: (305) 374-8500
Fax: (305) 789-7799
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served by CM/ECF on March 5, 2012, on all counsel or parties of record on the Service List below.

s/Brian W. Toth
Brian W. Toth

## SERVICE LIST

Cary A. Lubetsky
cal@khllaw.com
Michael J. Henderson
mjh@khllaw.com
Krinzman, Huss & Lubetsky
800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone: (305) 854-9700
Fax: (305) 854-0508
Attorneys for the Plaintiff